FILED

2012 SEP 20  PM 5: 41

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **I N D I C T M E N T** |
| Plaintiff, | ) ) ) | Cr. No. **3:12 CR 446** |
| vs. | ) ) | Title 18, United States Code, Sections 215(a)(2), 1344, 1349, and 1956(a)(1)(B)(i) |
| PAULETTE ROBERTS, | ) ) | |
| Defendant. | ) ) | **JUDGE HELMICK** |
| | | **MAG. JUDGE JAMES R. KNEPP II** |

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

1.     Fifth Third Bank was a "financial institution" within the meaning of Title 18, United States

Code, Section 20, in that it was an "insured depository institution" within the meaning of section

3(c)(2) of the Federal Deposit Insurance Act.   Fifth Third Bank operated under an affiliate

structure which included a Northwest Ohio affiliate office located in Toledo, Ohio.   Fifth Third

Bank and its affiliate offices, including the Northwest Ohio affiliate office, issued commercial

loans to members of the public.   One type of loan issued by Fifth Third Bank was referred to as a

Draw Note which allowed borrowers to receive loaned funds over time to pay for construction as it

progressed.   Fifth Third Bank's standard procedure for processing commercial loans involved the

ORIGINAL

preparation of a document known as a "Blue Memo", which was essentially an application for credit, and contained all details of the transaction, including the description of the property, the purpose for the loan, payment terms, repayment sources, collateral, sources and uses of funds, the guarantors, their financial positions, and any related transactions. Persons employed at Fifth Third Bank as "loan officers," or "relationship managers," were responsible for overseeing the preparation of the Blue Memo, and were ultimately responsible for its accuracy.

2. PAULETTE ROBERTS was a Vice President and loan officer for Fifth Third Bank in the Commercial Real Estate Department from approximately July 2004 to February 2007 with the responsibility of generating commercial loans for the bank. Internal to the bank, PAULETTE ROBERTS' position was referred to as a Relationship Manager.

3. PAULETTE ROBERTS used MT, an attorney and friend who also worked as outside counsel for Fifth Third Bank in related loan transactions, as her attorney to form an alleged business called Higher Ground Enterprises, LLC , an Ohio Limited Liability Company, prior to leaving her position at Fifth Third Bank. PAULETTE ROBERTS used Higher Ground Enterprises, LLC for the purposes of concealing the receipt of payments from certain borrowers for whom she generated loans.

4. Individuals both known and unknown to the Grand Jury and identified as GC, AS, CG, JG, JZ, PB, and TS were members of various Limited Liability Companies (LLC's), that obtained loans from Fifth Third Bank through PAULETTE ROBERTS. These individuals, in varying combinations, obtained loans through the LLC's (hereinafter referred to as "the Partnerships"), for the properties identified as A, B, C, D, E, F, G, and H on the map attached to this Indictment.

5. Stonebrook of Dundee, LLC was a Michigan Limited Liability Company created in part to

2

purchase and develop the land listed as Properties A and B on the map attached to this Indictment, located in Dundee, Michigan.

a. From its formation on or about October 17, 2003 to approximately April 18, 2005, Stonebrook of Dundee, LLC was composed of R. Cook Properties, Inc. (50%) which was solely owned by RC, an individual known to the Grand Jury, Malibu Building Company, Inc. (10%) which was solely owned by JM, an individual known to the Grand Jury, and JPT Development, LLC (40%) which was owned 33% by JZ and PB, and 67% by Carmel Point Development, LLC. Carmel Point Development, LLC was owned 50% each by PB and TS.

b. On or about April 18, 2005, Stonebrook of Dundee, LLC became owned 100% by Stonebrook of Dundee Holding Company, LLC. Stonebrook of Dundee Holding Company, LLC was owned 40% by JPT Development Number Two, LLC, 20% by S&B Properties of Dundee, LLC, and 40% by JMZ New Horizons, LLC. JPT Development Number Two was owned 33.33% each by PB, TS, and JZ. S&B Properties of Dundee was owned 50% each by PB and TS. JMZ New Horizon Properties was owned 100% by JZ.

c. PAULETTE ROBERTS obtained approval for three loans to Stonebrook of Dundee, LLC totaling $5,625,000.00, which she described in part in the relevant Blue Memo as a $2,677,000.00 loan to fund the purchase of land, a $1,748,000 loan to develop 62 of the 250 lots within the subdivision, and a $1,200,000.00 Residential Spec Line. The following charts represents a summary of the structure, loans, and ownership relative to Stonebrook of Dundee, LLC both before and after April 18, 2005:

3

| STONEBROOK OF DUNDEE, LLC. (10/17/2003 to 04/18/2005) | | | |
|---|---|---|---|
| Stonebrook of Dundee, LLC. | 100% | | |
| R. Cook Properties, LLC. | 50% | | |
| RC | | 100% | |
| Malibu Building Co., Inc. | 10% | | |
| JM | | 100% | |
| JPT, LLC. | 40% | | |
| JZ | | 33% | |
| Carmel Point Development, LLC. | | 67% | |
| PB | | | 50% |
| TS | | | 50% |

| STONEBROOK OF DUNDEE, LLC. (after 04/18/2005)  (A,B) | | | |
|---|---|---|---|
| Stonebrook of Dundee, LLC. | 100% | | |
| Stonebrook of Dundee Holding Company, LLC. | | 100% | |
| JPT Development Number Two, LLC. | | 40% | |
| PB | | | 33% |
| TS | | | 33% |
| JZ | | | 33% |
| S&B Properties of Dundee, LLC. | | 20% | |
| PB | | | 50% |
| TS | | | 50% |
| JMZ New Horizon Properties, LLC. | | 40% | |
| JZ | | | 100% |

| Loans: | | | |
|---|---|---|---|
| | 4/18/2005 | Land | $2,677,000.00 |
| | 4/18/2005 | Development | $1,748,000.00 |
| | 4/18/2005 | Res. Spec Line | $1,200,000.00 |
| | | | $5,625,000.00 |

6.     Park Development, LLC was a Michigan Limited Liability Company created in part to purchase land listed as Properties C, D, E, and F on the map attached to this Indictment, in Dundee, Michigan.   Park Development was owned 50% each by Park Village, LLC and Como Home

4

Builders, LLC.   Park Village, LLC was owned 50% each by CG and JG.   Como Home Builders was owned 66.67% by GC and 33.33% by AS.   On April 13, 2006, AS transferred his interest in Como Home Builders to GC, who then became sole owner of the company on paper. PAULETTE ROBERTS obtained approval from Fifth Third Bank for three loans to Park Development, LLC totaling $6,240,000.00, which she described in part in the relevant Blue Memos as a $3,600,000.00 loan to fund the purchase of 127 acres of farmland, a $1,000,000.00 Draw Note to fund infrastructure/engineering costs of the first phase of development, and a $1,640,000.00 loan to fund the purchase of 25.66 acres of farmland.   The following chart represents a summary of the structure, ownership, and loans generated relative to Park Development, LLC:

| PARK DEVELOPMENT, LLC.   (C,D,E,F) | |
|---|---|
| Park Development, LLC. | 100% |
| Park Village, LLC. | 50% |
| CG | 50% |
| JG | 50% |
| Como Home Builders, LLC. | 50% |
| GC | 66.67% |
| AS   (until 04/13/2006) | 33.33% |

Loans:

| | | |
|---|---|---|
| 6/29/2005 | Land | $3,600,000.00 |
| 6/29/2005 | Infrastructure/engineering | $1,000,000.00 |
| 10/31/2005 | Land | $1,640,000.00 |
| | | $6,240,000.00 |

7.     Dundee Crossings, LLC was a Michigan Limited Liability Company created in part to purchase land listed as Property H on the map attached to this Indictment, located in Dundee, Michigan.   Dundee Crossings, LLC was owned 20% by Como Home Builders, LLC, 60% by JPT Crossings, LLC, and 20% by Park Village, LLC.   Como Home Builders, LLC, was owned 100%

by GC on paper. JPT Crossings, LLC was owned 33% each by JZ, PB, and TS, and Park Village was owned 50% each by CG and JG. PAULETTE ROBERTS obtained approval from Fifth Third Bank for one loan relative to Dundee Crossings, LLC in the amount of $2,250,000.00, which in part she described as a $2,250,000.00 loan to fund the purchase of 30.5 acres of farmland. The following chart represents the structure, ownership and loans relative to Dundee Crossings, LLC:

| DUNDEE CROSSINGS, LLC. (H) | | |
|---|---|---|
| Dundee Crossings, LLC. | 100% | |
| Como Home Builders, LLC. | 20% | |
| GC | | 100% |
| JPT Crossings, LLC. | 60% | |
| JZ | | 33.33% |
| PB | | 33.33% |
| TS | | 33.33% |
| Park Village, LLC. | 20% | |
| CG | | 50% |
| JG | | 50% |

Loans:

| 4/13/2006 | Land | $2,250,000.00 |
|---|---|---|
| | | $2,250,000.00 |

8.    Dundee Crossings II, LLC was a Michigan Limited Liability Company created in part to purchase land listed as Property G on the map attached to this Indictment, located in Dundee, Michigan. Dundee Crossings II, LLC was owned 30% by Como Home Builders, LLC, 30% by JPT Crossings, LLC, and 40% by Park Village, LLC. Como Home Builders, LLC, was owned 66.67% by GC and 33.33% by AS. JPT Crossings, LLC was owned 33% each by JZ, PB, and TS, and Park Village was owned 50% each by CG and JG. PAULETTE ROBERTS obtained approval from Fifth Third Bank for one loan relative to Dundee Crossings II, LLC in the amount of $3,684,000.00 which she described in part in the relevant Blue Memo as a $3,684,000.00 loan to

fund the purchase of 52 acres of farmland.   The following chart represents a summary of the structure, ownership, and loans relative to Dundee Crossings II, LLC:

| DUNDEE CROSSINGS II, LLC. | (G) |
|---|---|

| | |
|---|---|
| Dundee Crossings II, LLC. | 100% |
| Como Home Builders, LLC. | 30% |
| GC | 50% |
| AS | 50% |
| JPT Crossings, LLC. | 30% |
| JZ | 33.33% |
| PB | 33.33% |
| TS | 33.33% |
| Park Village, LLC. | 40% |
| CG | 50% |
| JG | 50% |

Loans:

| | | |
|---|---|---|
| 9/28/2005 | Land | $3,684,000.00 |
| | | $3,684,000.00 |

**COUNT 1**
**Conspiracy**
**(18 U.S.C. § 1349)**

The Grand Jury charges:

9.    Paragraphs 1-8 of the General Allegations are incorporated herein and realleged by reference.

10.    From in or about February 2001, and continuing thereafter until in or about March 2010, in the Northern District of Ohio, Western Division, the Eastern District of Michigan, and elsewhere, the defendant, PAULETTE ROBERTS, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with other persons, both known and unknown to the Grand Jury, to commit the following offense against the United States, to wit:   knowingly executing, and

7

attempting to execute, a scheme and artifice to defraud Fifth Third Bank and to obtain moneys, funds, credits, assets, securities and other property owned by, or under the control of, a financial institution, to wit, Fifth Third Bank of Toledo, by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

It was part of the conspiracy that:

11.     In connection with certain real estate transactions described in paragraphs 1 through 8, PAULETTE ROBERTS corruptly solicited $300,000.00 in payments from the Partnerships and actually received in excess of $100,000.00 from GC and other members of the Partnerships, intending to be influenced or rewarded in connection with loans issued by Fifth Third Bank to the Partnerships, for the purchase, development of properties in close proximity to Cabela's, Inc., of Dundee, Michigan.

12.     PAULETTE ROBERTS made agreements with the partners about their expected use of loaned funds which were inconsistent with representations she caused to be made in the Blue Memos.

13.     PAULETTE ROBERTS caused loan documentation to be prepared following approval of the Blue Memos which relied upon misrepresentations made by PAULETTE ROBERTS in the Blue Memos.   This loan documentation created legally binding contracts between the Partnerships and Fifth Third Bank.

14.     With respect to certain loans, PAULETTE ROBERTS caused the disbursement of loaned funds in a manner which differed materially from the disbursements previously approved in the Blue Memos.

8

15.    Subsequent to certain loan closings, PAULETTE ROBERTS caused the disbursement of funds from construction draw notes in a manner inconsistent with both Fifth Third Bank's internal policies, and the legally binding contracts previously executed between Fifth Third Bank and the Partnerships.

16.    PAULETTE ROBERTS used MT, an attorney and friend who also worked as outside counsel for Fifth Third Bank in related loan transactions, as her attorney to form Higher Ground Enterprises, LLC, an Ohio Limited Liability Company, before leaving her position at Fifth Third Bank.  PAULETTE ROBERTS then used Higher Ground Enterprises, LLC for the purpose of concealing the receipt of payments from certain borrowers, including GC and other members of the Partnerships, on whose behalf she obtained loans through Fifth Third Bank.

17.    PAULETTE ROBERTS further used Higher Ground Enterprises, LLC as a front for a non-existent consulting business, which she used to conceal the unlawful nature of the payments from GC and other members of the Partnerships, in part by fabricating and causing to be delivered fraudulent invoices for services not rendered to GC and other members of the Partnerships.

18.    PAULETTE ROBERTS opened a bank account in the name of Higher Ground Enterprises, LLC for the purpose of concealing the receipt and deposit of payments received from GC and other members of the Partnerships and corruptly accepted in excess of $100,000.00 in payments through Higher Ground Enterprises, LLC from GC and other members of the Partnerships.

<u>OVERT ACTS</u>

On or about the following dates in furtherance of the conspiracy, and to effectuate its objects, the following overt acts, among others, were committed in the Northern District of Ohio, Western Division, the Eastern District of Michigan, and elsewhere:

9

19.    On February 23, 2001, Articles of Organization for Park Village, LLC were filed with the State of Michigan.

20.    On June 21, 2002, Articles of Organization for Carmel Point Development, LLC were filed with the State of Michigan.

21.    On April 14, 2003, an individual known to the Grand Jury signed two purchase agreements concerning the properties identified as A and B on the map attached to this Indictment.

22.    On October 17, 2003, Articles of Organization for Stonebrook of Dundee, LLC were filed with the State of Michigan.

23.    On October 17, 2003, Articles of Organization for JPT Development, LLC were filed with the State of Michigan.

24.    On October 28, 2003, members of the Partnerships, and others known to the Grand Jury, signed two Land Contracts concerning the Properties identified as A and B on the map attached to this Indictment.

25.    On October 29, 2003, Articles of Organization for JMZ New Horizon Properties, LLC were filed with the State of Michigan.

26.    On April 5, 2004, a member of the Partnerships signed a purchase agreement concerning the Property identified as "C" on the attached map.   The purchase price for this property was $1,290,000.00.

27.    Between on or about April 28, 2004, and on or about September 28, 2005, the exact date and time being unknown to the Grand Jury, PAULETTE ROBERTS engaged in a conversation with GC while in Michigan.   PAULETTE ROBERTS stated that she would like to make some money with GC, and wanted to become his partner someday.   GC stated he was not interested in

10

forming a partnership with PAULETTE ROBERTS, but that if "they" made good money on the various properties in Dundee, which were the subject of the loans with Fifth Third Bank, he would talk to his other partners and they would give PAULETTE ROBERTS, the loan officer, a gift. GC stated the amount of the gift would be $300,000.00.  PAULETTE ROBERTS agreed to the proposal.

28.  On May 5, 2004, a member of the Partnerships agreed to purchase the Property identified as "D" on the attached map.  The purchase price was $1,500,000.00.

29.  On October 27, 2004, Articles of Organization for Como Home Builders were filed with the State of Michigan.

30.  On March 10, 2005, Articles of Organization for Stonebrook of Dundee Holding Company, LLC were filed with the State of Michigan.

31.  On March 10, 2005, Articles of Organization for JPT Development Number Two, LLC were filed with the State of Michigan.

32.  On March 10, 2005, Articles of Organization for S&B Properties of Dundee, LLC were filed with the State of Michigan.

33.  On April 14, 2005, PAULETTE ROBERTS submitted a Blue Memo to obtain approval for three loans totaling $5,625,000.00, for the properties identified as " A" and "B" on the map attached to this Indictment.  This Blue Memo contained false information in that it erroneously stated that the purchase price for the land was $3,569,250.20.  The Blue Memo also omitted material information in that it failed to disclose a $569,853.20 cash payment made from loaned funds at closing to JPT Development, LLC an entity wholly owned by the borrowers.

34.  On April 17, 2005, members of the Partnerships and others known to the Grand Jury signed

11

three purchase agreements concerning the purchase of shares in Stonebrook Holding Company.

35.    On April 18, 2005 members of the Partnerships closed the loan relative to the properties identified as "A" and "B" on the map attached to this Indictment.   The total funds authorized under this loan were $5,625,000.00.   Of the total amount of the loan, $4,425,000.00 was disbursed on or about April 18, 2005.   At this closing, a check in the amount of $569,853.20 was paid to JPT Development, LLC, an entity wholly owned by the borrowers.

36.    On June 2, 2005, Articles of Organization for Park Development, LLC were filed with the State of Michigan.

37.    On June 8, 2005, PAULETTE ROBERTS submitted a Blue Memo to obtain approval for two loans totaling $4,600,000.00, for the properties identified as "C", " D", and "E" on the map attached to this Indictment.   This Blue Memo contained false information in that it erroneously indicated that the Partnerships would contribute $500,000.00 in equity into the project, when in fact the Partnerships contributed nothing as equity into the project.   This Blue Memo also contained a statement indicating that one of the loans, a $1,000,000.00 Draw Note, would be used to "fund infrastructure/engineering costs of the first phase of development for the 127 acre parcel" when in fact the funds were disbursed absent appropriate documentation and verification at the direction of PAULETTE ROBERTS and used for purposes other than those listed and approved in the Blue Memo.

38.    On June 20, 2005, a member of the Partnerships signed a purchase agreement concerning the Property identified as "H" on the map attached to this Indictment.   The purchase price for this land was $2,165,500.00.

39.    On June 28, 2005, members of the Partnerships signed a purchase agreement concerning

the Property identified as "E" on the map attached to this Indictment.   The purchase price was

$762,500.00.

40.   On June 29, 2005, members of the Partnerships closed the loan on properties identified as

"D" and "E" on the map attached to this Indictment.   On or about this date, Fifth Third Bank

disbursed $2,284,751.51 of the $4,600,000.00 to the Partnerships.

41.   On June 30, 2005, a member of the Partnerships signed a purchase agreement concerning

the Property identified as "G" on the map attached to this Indictment for $3,684,000.00.

42.   On July 1, 2005 Articles of Organization for Dundee Crossings, LLC were filed with the

State of Michigan.

43.   On July 1, 2005 Articles of Organization for Dundee Crossings II, LLC were filed with the

State of Michigan.

44.   On July 21, 2005, funds in the amount of $150,000.00 were disbursed to members of the

Partnerships in the form of a draw on an existing construction development loan intended to fund

infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in

violation of documented procedures and without required documentation.

45.   On July 25, 2005, PAULETTE ROBERTS submitted a Blue Memo concerning the

Property identified as "H" on the map attached to this Indictment.   The Blue Memo erroneously

indicated that the Partnerships had contributed $500,000.00 in equity into another related project,

when in fact the Partnerships contributed none of their own money as equity into the project.

46.   On July 26, 2005, a member of the Partnerships closed on the purchase of the Property

identified as "C" on the map attached to this Indictment.   On or about July 27, 2005, Fifth Third

Bank disbursed $1,307,595.11 of the $4,600,000.00 in funds previously loaned to the Partnerships

13

on June 29, 2005.

47.    On July 27, 2005, funds in the amount of $50,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

48.    On July 28, 2005, a member of the Partnerships signed a purchase agreement concerning the Property identified as "F" on the map attached to this Indictment, showing a sales price of $2,050,234.00.

49.    On August 5, 2005, funds in the amount of $50,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

50.    On September 15, 2005, PAULETTE ROBERTS submitted a Blue Memo to obtain approval for $3,684,000.00 in loans concerning the Property identified as "G" on the map attached to this Indictment.

51.    On September 19, 2005, Articles of Organization for JPT Crossings, LLC were filed with the State of Michigan.

52.    On September 27, 2005, funds in the amount of $40,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

53.    On September 28, 2005, a member of the Partnerships signed an amendment to the

purchase agreement concerning the Property identified as "G" on the map attached to this Indictment reducing the sales price to $3,544,000.00.

54. On September 28, 2005, members of the Partnerships closed the loan concerning the Property identified as "G" on the map attached to this Indictment. Fifth Third Bank loaned $3,684,000.00 to the Partnerships, which was fully disbursed at loan closing.

55. On October 24, 2005, PAULETTE ROBERTS submitted a Blue Memo concerning the Property identified as "F" on the map attached to this Indictment, with a total loan amount of $1,640,000.00. The Blue Memo erroneously indicated "the hard equity in this deal is being contributed in cash" by a person known to the Grand Jury from Detroit, Michigan, and that this person "is in the process of buying into the [...] project." In fact, the person from Detroit never contributed any money to the project and never bought into the Partnerships referred to above.

56. On October 31, 2005, members of the Partnerships closed the loan concerning the Property identified as "F" on the map attached to this Indictment. Fifth Third Bank loaned $1,640,000.00 to the Partnerships which was fully disbursed on or about this date.

57. On January 30, 2006, funds in the amount of $17,748.49 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs. These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

58. On February 13, 2006, funds in the amount of $10,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs. These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

15

59.    On February 28, 2006, funds in the amount of $10,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

60.    On March 7, 2006, funds in the amount of $40,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

61.    On March 30, 2006, funds in the amount of $76,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

62.    On April 3, 2006, funds in the amount of $76,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

63.    On April 5, 2006, funds in the amount of $4,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

64.    On April 11, 2006, PAULETTE ROBERTS submitted a revised Blue Memo concerning the Property identified as "H" on the map attached to this Indictment which increased the total loan

16

amount to $2,250,000.00.

65.    On April 13, 2006, funds in the amount of $7,500.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

66.    On April 13, 2006, members of the Partnerships closed the loan concerning the Property identified as "H" on the map attached to this Indictment.   Fifth Third Bank loaned $2,250,000.00 to the Partnerships which was fully disbursed on or about this date.

67.    On May 1, 2006, funds in the amount of $20,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

68.    On June 1, 2006, funds in the amount of $20,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

69.    On June 29, 2006, funds in the amount of $85,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.   These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

70.    On or about July 31, 2006, funds in the amount of $64,500.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to

fund infrastructure and engineering costs. These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

71.     On September 1, 2006, funds in the amount of $38,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs. These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

72.     On October 4, 2006, funds in the amount of $105,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs. These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

73.     On December 5, 2006, funds in the amount of $20,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs. These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

74.     On January 2, 2007, funds in the amount of $137,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs. These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

75.     On January 8, 2007 Articles of Incorporation for Higher Ground Enterprises, LLC were filed with the State of Ohio by MT for PAULETTE ROBERTS.

76.     On February 1, 2007, members of the Partnerships sold the Property identified as "G" on the map attached to this Indictment to Meijer, Inc. (under the name Good Will Co, Inc.) for

18

$7,155,000.00.

77. On or about February 1, 2007, PAULETTE ROBERTS told GC that she would like to receive her money. GC told PAULETTE ROBERTS that after the sale of property by Dundee Crossings II, LLC to Meijer, Inc., he and his partners would pay PAULETTE ROBERTS $200,000.00, with an additional $100,000.00 to be paid when Dundee Crossings, LLC sold its property. PAULETTE ROBERTS stated she agreed with this plan, and told GC she would invoice him for consulting work in order to receive her payments. GC promised to pay the consulting invoices.

78. Also on or about February 1, 2007, PAULETTE ROBERTS told GC that she wanted him to make the payments in multiple checks, to a company named Higher Ground Enterprises.

79. On February 2, 2007, funds in the amount of $28,000.00 were disbursed to members of the Partnerships in the form of a draw on an existing construction development loan intended to fund infrastructure and engineering costs. These funds were disbursed by PAULETTE ROBERTS in violation of documented procedures and without required documentation.

80. On or about February 9, 2007, PAULETTE ROBERTS resigned from employment with Fifth Third Bank, telling her superiors and co-workers that she was going to work for LZB, a company known to the Grand Jury.

81. On or about February 28, 2007, PAULETTE ROBERTS caused to be delivered to GC Invoice #1 from Higher Ground Enterprises, LLC, in the amount of $37,300.00, with the description: "Consulting Retainer: Commercial Real Estate Analysis-Michigan Project"

82. On or about March 1, 2007, PAULETTE ROBERTS caused to be delivered to a member of the Partnerships an Invoice #1 from Higher Ground Enterprises, LLC in the amount of $37,500.00,

19

with the description: "Retainer: Commercial Real Estate Analysis".

83.  On or about March 2, 2007, PAULETTE ROBERTS opened Lasalle Bank Business Checking Account ending in 9278 in the name of Higher Ground Enterprises, LLC having a mailing address of 6601 Kingsbridge Drive, Sylvania, Ohio.  PAULETTE ROBERTS was the sole signer on the checking account.

84.  On or about March 2, 2007, PAULETTE ROBERTS caused the following check to be deposited into Higher Ground Enterprises, LLC account 9278 at Lasalle Bank (now Bank of America):

| DATE | CHECK# | AMOUNT | FROM | MEMO |
|------|--------|--------|------|------|
| 03/01/2007 | 095 | $37,300.00 | Como Home Builders | Consulting Fee |

85.  On or about March 15, 2007, PAULETTE ROBERTS caused to be delivered to GC Invoice #2 from Higher Ground Enterprises, LLC in the amount of $23,300.00 with the description:  "Consulting Expense: Commercial Real Estate Analysis – Michigan Project – Dundee Additional Acres – West So. Side."

86.  On or about March 15, 2007, PAULETTE ROBERTS caused to be delivered to a member of the Partnerships Invoice #2 from Higher Ground Enterprises, LLC in the amount of $21,500.00, with the description:  "Consulting Expense: Commercial Real Estate Analysis – Michigan Project".

87.  On or about March 19, 2007, PAULETTE ROBERTS caused the following check to be deposited into Higher Ground Enterprises, LLC account 9278 at Lasalle Bank (now Bank of America):

20

| DATE | CHECK# | AMOUNT | FROM | MEMO |
|------|--------|--------|------|------|
| 03/19/2007 | 093 | $23,300.00 | Como Home Builders | Consulting Fee |

88.    On or about April 2, 2007, PAULETTE ROBERTS caused to be delivered to a member of the Partnerships Invoice #3 from Higher Ground Enterprises, LLC in the amount of $41,250.00, with the description:   "Consulting Expense: Commercial Real Estate Analysis – Florida Project".

89.    On or about April 24, 2007, PAULETTE ROBERTS caused the following checks to be deposited into Higher Ground Enterprises, LLC account 9278 at Lasalle Bank (now Bank of America):

| DATE | CHECK# | AMOUNT | FROM | MEMO |
|------|--------|--------|------|------|
| 04/02/2007 | 094 | $17,600.00 | Como Home Builders | Consulting Fee |
| 04/21/2007 | 096 | $21,800.00 | Como Home Builders | Consulting Fee |

90.    On or about May 14, 2007, PAULETTE ROBERTS caused the following check to be deposited into Higher Ground Enterprises, LLC account 9278 at Lasalle Bank (now Bank of America):

| DATE | CHECK# | AMOUNT | FROM | MEMO |
|------|--------|--------|------|------|
| 05/07/2007 | 1025 | $37,500.00 | Park Village, LLC | none |

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
## Financial Institution Fraud
## (18 U.S.C. § 1344)

The Grand Jury further charges:

91.    Paragraphs 1-8 of the General Allegations and Paragraphs 9-90 of Count 1 are incorporated herein and realleged by reference.

21

92.     From in or about April 2005 to in or about February 2007, the exact dates unknown to the

Grand Jury, in the Northern District of Ohio, Western Division, and elsewhere, PAULETTE

ROBERTS knowingly executed and attempted to execute a scheme and artifice to defraud Fifth

Third Bank, a federally insured financial institution, and to obtain money, funds, credits, assets,

securities or other property owned by, and under the custody and control of Fifth Third Bank by

means of false and fraudulent pretenses, representations and promises.

93.     It was a part of the scheme and artifice to defraud that on or about April 14, 2005,

PAULETTE ROBERTS submitted a Blue Memo to obtain approval for three loans totaling

$5,625,000.00, for the properties identified as "A" and "B" on the map attached to this Indictment.

This Blue Memo contained false information in that it erroneously stated that the purchase price

for the land was $3,569,250.20.   The Blue Memo also omitted material information in that it

failed to disclose a $569,853.20 cash payment made from loaned funds at closing to JPT

Development, LLC, an entity wholly owned by the borrowers.

94.     It was further a part of the scheme and artifice to defraud that, on or about June 8, 2005,

PAULETTE ROBERTS submitted a Blue Memo to obtain approval for two loans totaling

$4,600,000.00, for the properties identified as "C", " D", and "E" on the map attached to this

Indictment.   This Blue Memo contained false information in that it erroneously indicated that the

Partnerships would contribute $500,000.00 in equity into the project, when in fact the Partnerships

had no intention of contributing any equity into the project.   This Blue Memo also contained a

statement which indicated one of the loans, a $1,000,000.00 draw note, would be used to "fund

infrastructure/engineering costs of the first phase of development for the 127 acre parcel" when in

fact the funds were disbursed absent appropriate documentation and verification at the direction of

PAULETTE ROBERTS and used for purposes other than those listed and approved in the Blue Memo.

95.    It was further a part of the scheme that on or about July 25, 2005, PAULETTE ROBERTS submitted a Blue Memo concerning the Property identified as "H" on the map attached to this Indictment.   The Blue Memo erroneously indicated that the Partnerships had contributed $500,000.00 in equity into another related project, when in fact the Partnerships contributed none of their own money as equity into the project.

96.    It was further a part of the scheme that on or about the dates set forth below, that PAULETTE ROBERTS caused funds in the amounts listed below to be disbursed to members of the Partnerships.   These funds were disbursed under the guise of a draw on an existing construction development loan intended to fund infrastructure and engineering costs.

| DATE | AMOUNT |
|---|---|
| 07/21/05 | 150,000.00 |
| 07/27/05 | 50,000.00 |
| 08/05/05 | 50,000.00 |
| 09/27/05 | 40,000.00 |
| 01/30/06 | 17,748.49 |
| 02/13/06 | 10,000.00 |
| 02/28/06 | 10,000.00 |
| 03/07/06 | 40,000.00 |
| 03/30/06 | 76,000.00 |
| 04/03/06 | 76,000.00 |
| 04/05/06 | 4,000.00 |
| 04/13/06 | 7,500.00 |
| 05/01/06 | 20,000.00 |
| 06/01/06 | 20,000.00 |
| 06/29/06 | 85,000.00 |
| 07/31/06 | 64,500.00 |
| 09/01/06 | 38,000.00 |
| 10/04/06 | 105,000.00 |
| 12/05/06 | 20,000.00 |
| 01/02/07 | 137,000.00 |
| 02/02/07 | 28,000.00 |

23

All in violation of Title 18, United States Code, Section 1344.

## COUNT 3
## Bank Bribery
## (18 U.S.C. § 215(a)(2))

The Grand Jury further charges:

97.    Paragraphs 1-8 of the General Allegations and paragraphs 9-90 of Count 1 are incorporated herein and realleged by reference.

98.    From in or about February 2001, and continuing thereafter until in or about March 2010, PAULETTE ROBERTS an officer, employee, and agent of a financial institution, to wit:  Fifth Third Bank, corruptly accepted and agreed to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business or transaction of such institution, to wit, accepting payments totaling in excess of $100,000.00 from individuals known to the Grand Jury intending to be influenced and rewarded in connection with loans issued by PAULETTE ROBERTS while at Fifth Third Bank.

All in violation of Title 18, United States Code, Section 215(a)(2).

## COUNTS 4-44
## Money Laundering
## (18 U.S.C. § 1956(a)(1)(B)(i))

The Grand Jury further charges:

99.    Paragraphs 1-8 of the General Allegations and Paragraphs 97-98 of Count 3 are incorporated herein and realleged by reference.

100.    On or about the dates set forth below, in the Northern District of Ohio, Western Division, PAULETTE ROBERTS, knowing that the property involved in a financial transaction represented

24

the proceeds of some form of unlawful activity, conducted and attempted to conduct such a

financial transaction which in fact involved the proceeds of specified unlawful activity, to wit,

bank bribery in violation of Title 18, United States Code, Section 215(a)(2), knowing the

transaction was designed in whole or in part to conceal or disguise the nature, location, source,

ownership, and control of the proceeds of specified unlawful activity in violation of Title 18,

United States Code, Section 1956(a)(1)(B)(i):

a)  Roberts' financial transactions involving bribe money:

| COUNT | DATE | CHECK # | TRANSACTION | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 4 | 03/02/07 | 095 | Deposit | $37,300.00 | Como Home Builders |
| 5 | 03/19/07 | 093 | Deposit | $23,300.00 | Como Home Builders |
| 6 | 04/24/07 | 094 | Deposit | $17,600.00 | Como Home Builders |
| 7 | 04/24/07 | 096 | Deposit | $21,800.00 | Como Home Builders |
| 8 | 05/14/07 | 1025 | Deposit | $37,500.00 | Park Village, LLC. |

b)  Roberts' financial transactions involving vehicles:

| COUNT | DATE | CHECK # | TRANSACTION | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 9 | 03/08/07 | 0091 | Withdrawal | $36,416.23 | Gerwick Nissan |
| 10 | 05/02/07 | 1002 | Withdrawal | $27,770.50 | Lexus of Toledo |
| 11 | 05/23/07 | 1003 | Withdrawal | $ 149.75 | State of Ohio BMV |
| 12 | 06/05/07 | 1004 | Withdrawal | $ 1,068.08 | American Commerce Insurance Co. |
| 13 | 11/15/07 | 1013 | Withdrawal | $ 342.59 | BP Oil Card Services (gas 4227-6510-0297-1231) |
| 14 | 11/27/07 | 1015 | Withdrawal | $ 830.00 | American Commerce Insurance Co. (Car Insurance 11 000662708) |
| 15 | 12/24/07 | 1016 | Withdrawal | $ 121.29 | BP Oil Card Services (Auto Expense - gas 4227-6510-0297-1231) |
| 16 | 05/30/08 | 1017 | Withdrawal | $ 725.00 | American Commerce Insurance Co. (Auto Expense) |
| 17 | 06/24/08 | 1018 | Withdrawal | $ 55.25 | Ohio Bureau of Motor Vehicles (Auto Expense) |
| 18 | 02/24/09 | 1022 | Withdrawal | $ 120.00 | Toledo Photo Enforcement Program |
| 19 | 06/17/09 | 1023 | Withdrawal | $ 109.00 | Ohio Treasurer, Kevin L. Boyce (Vehicle Registration) |
| 20 | 12/01/09 | 1026 | Withdrawal | $ 586.00 | American Commerce Insurance |

c)  Roberts' financial transactions involving accounting and tax fees:

| COUNT | DATE | CHECK # | TRANSACTION | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 21 | 09/06/07 | 1008 | Withdrawal | $ 695.00 | Brell, Holt & Company (Accounting Fees) |
| 22 | 07/21/08 | 1019 | Withdrawal | $ 1,525.00 | Brell, Holt & Company ('08 Tax Work) |

d)  Roberts' financial transactions involving the purchase and sale of gold coins:

25

| COUNT | DATE | CHECK # | TRANSACTION | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 23 | 11/14/07 | 1011 | Withdrawal | $49,279.00 | Abbott's Corporation |
| 24 | 11/12/09 | 131738 | Deposit | $26,011.00 | Toledo Coin Exchange, Inc. |
| 25 | 01/29/10 | 135713 | Deposit | $ 2,122.00 | Toledo Coin Exchange, Inc. |

b) Roberts' financial transactions involving payments on credit cards:

| COUNT | DATE | CHECK # | TRANSACTION | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 26 | 08/27/07 | 1006 | Withdrawal | $ 718.28 | CitiCards (5466160153279797 Travel Expense) |
| 27 | 10/26/07 | 1009 | Withdrawal | $ 1,077.67 | CitiCards (5424-1806-1418-9717) |
| 28 | 11/13/07 | 1010 | Withdrawal | $ 1,000.00 | Chase Card Services (4417-1242-2897-9560) |
| 29 | 11/15/07 | 1012 | Withdrawal | $ 1,307.13 | CitiCards (Expenses 5424-1806-1418-9717) |
| 30 | 12/28/09 | 1028 | Withdrawal | $ 9,000.00 | CitiCards (5466160153279797) |

c) Roberts' financial transactions involving the attempted design and construction of a

personal residence:

| COUNT | DATE | CHECK # | TRANSACTION | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 31 | 04/18/07 | 0092 | Withdrawal | $ 5,000.00 | McPherson & Associates (Quail Manor Project) |
| 32 | 04/20/07 | 0093 | Withdrawal | $ 400.00 | J. C. Andrus & Associates (Boundary Survey - 50% Deposit) |
| 33 | 05/03/07 | 0094 | Withdrawal | $ 400.00 | J. C. Andrus & Associates (Survey Work - Balance of Payment Due) |
| 34 | 07/03/07 | 1005 | Withdrawal | $ 6,000.00 | McPherson & Associates (Lot 5 Design Work) |
| 35 | 08/13/08 | 1020 | Withdrawal | $ 1,150.00 | Mike Graham |

d) Roberts' financial transactions involving legal fees:

| COUNT | DATE | CHECK # | TRANSACTION | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 36 | 11/15/07 | 1014 | Withdrawal | $ 225.10 | Shumaker Loop & Kendrick (Legal Fees) |
| 37 | 11/17/09 | 1024 | Withdrawal | $10,000.00 | McHugh & McCarthy, Ltd. (Legal Retainer 3986-001) |
| 38 | 12/29/09 | 1029 | Withdrawal | $ 3,045.00 | McHugh & McCarthy, Ltd. (3986-001) |
| 39 | 02/04/10 | 1030 | Withdrawal | $ 1,338.95 | McHugh & McCarthy, Ltd. (Statement #38809 3986-001) |
| 40 | 03/19/10 | 1031 | Withdrawal | $ 1,200.00 | McHugh & McCarthy, Ltd. (3986-001) |

e) Roberts' financial transactions involving loans to family:

| COUNT | DATE | CHECK # | TRANSACTION | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 41 | 07/02/07 | 1007 | Withdrawal | $ 2,200.00 | Georgeann Roberts |
| 42 | 12/27/07 | 3022 | Deposit | $ 2,300.00 | Georgeann Roberts |

f) Roberts' financial transactions involving payments to herself (Paulette Roberts):

| COUNT | DATE | CHECK # | TRANSACTION | AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 43 | 08/20/08 | 1021 | Withdrawal | $ 1,000.00 | Paulette Roberts |
| 44 | 12/17/09 | 1027 | Withdrawal | $ 2,500.00 | Paulette Roberts (Draw) |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

26

## **FORFEITURE SPECIFICATIONS**

1.      The General Allegations and Counts 1 to 44 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)((A) and (C), and 28, United States Code, Section 2461(c).

2.      Upon conviction of the offenses in violation of Title 18, United States Code, Sections 215, 1344, 1349, and 1956(a)(1)(B)(i), as set forth in Counts 1 to 44 of this Indictment, PAULETTE ROBERTS, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(A) and (C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.   The property to be forfeited includes, but is not limited to, the following:

| Directly Traceable Assets: |
| :---: |
| 2007 Nissan Murano having VIN # JN8AZ08W47W610434 |
| 2004 Lexus ES 330 having VIN # JTHBA30G945044722 |
| Twenty-eight (28) Canadian Maple Leaf gold coins (1 oz each) |
| Twenty-nine (29) American Eagle gold coins (1 oz each) |
| Substitute Assets: |
| Lot #5, Quail Hollow, Monclova Township, Lucas County, OH |
| Condominum located at 6601Kingsbridge Drive, Sylvania, OH |

### **Substitute Assets**

3.      The allegations contained in Counts 1 to 44, and Forfeiture Specifications 1 and 2, of this Indictment are hereby realleged and incorporated by reference herein.

4.      If any of the property described in Paragraph 2 of the Forfeiture Specifications, above, as a

result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL.

Original document -- Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.

28

## PROPERTY MAP



*Note: For illustrative purposes only, not to scale.*